1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| DARREN GILBERT, | Case No. 1:21-cv-01358-JLT-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT WITH REDUCTION IN ATTORNEYS' FEES |
| v. | |
| HBA ENTERPRISES, INC., et al., | |
| Defendants. | ORDER REQUIRING SERVICE ON DEFENDANTS WITHIN THREE DAYS |
| | (ECF No. 22) |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

11
12
13
14
15
16
17
18

## I.

19

## INTRODUCTION

20

Currently before the Court is Darren Gilbert's ("Plaintiff") motion for default judgment, filed on March 28, 2022.  (ECF No. 22.)  Plaintiff seeks default judgment against Defendants HBA Enterprises, Inc. ("HBA"), and Abdulsalam Mahmood Rashed dba Stop 2 Save aka 7 Star Liquor ("Rashed").  No opposition to the motion was filed, despite the Court granting Defendant Rashed an extension of time to file an opposition.  On July 6, 2022, the Court held a hearing on the motion for default judgment, at which no appearances were made on behalf of Defendants. Having considered the moving papers, the declarations and exhibits attached thereto, the nonappearance of Defendants at the hearing, as well as the Court's file, the Court issues the

21
22
23
24
25
26
27
28

following findings and recommendations recommending granting Plaintiff's motion for default judgment, subject to a reduction in the requested attorneys' fees as outlined below.

## II.

## BACKGROUND

### A.  Procedural History

On September 10, 2021, Plaintiff filed this action and summonses were issued.  (Compl., ECF Nos. 1, 2.)  On October 18, 2021, a summons was returned executed as to HBA.  (ECF No. 4.)  Default was entered against HBA on November 12, 2021.  (ECF No. 8.)  On January 10, 2022, a summons was returned executed as to Defendant Rashed.  (ECF No. 11.)

On January 28, 2022, the Court granted Plaintiff's request to extend the service deadline to allow for Plaintiff to re-serve the Defendants, based on a proffer that it was unclear whether the initial substituted service was proper.  (ECF Nos. 13, 14.)  On February 17, 2022, summonses were returned executed, proffering that Defendant HBA was served on February 3, 2022, and Defendant Rashed was served on February 2, 2022.  (ECF Nos. 15, 16.)  On March 17, 2022, default was entered against both Defendants.  (ECF Nos. 18, 19, 20.)

On March 28, 2022, Plaintiff filed the motion for default judgment that is currently before the Court.  (ECF No. 22.)  On April 29, 2022, Defendant Rashed filed a motion for an extension of time to file an opposition to the motion for default judgment.  (ECF No. 24.)  Following the filing of a statement of non-opposition, on May 6, 2022, the Court granted Rashed's motion, continued the hearing on the motion until July 6, 2022, ordered Defendants to file any opposition before June 15, 2022, and ordered any reply to be field before June 29, 2022.  (ECF No. 27.)  No Defendants have filed an opposition to the motion.

On July 6, 2022, the Court held a hearing via videoconference, with the courtroom open to the public.  Counsel Tanya E. Moore appeared via video on behalf of Plaintiff.  Nobody appeared on behalf of Defendants via videoconference, the public access telephone line, nor in person, despite the courtroom being open to the public.

### B.  Plaintiff's Allegations in the Operative Complaint

Plaintiff brings this action against Defendants alleging violation of the Americans with

Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, (the "ADA"); California's Unruh Civil Rights Act, California Civil Code § 51, *et seq.* (the "Unruh Act"); and California Health and Safety Code §§ 4450, 19955(a), 19959.  (Compl.; Pl.'s Mem. P. & A. Supp. Mot. Default J. ("Mem."), ECF No. 22-1.)[1]   Plaintiff alleges that he is a disabled individual that is substantially limited in his ability to walk, and must use a wheelchair or prosthetic for mobility.  (FAC ¶ 8; Mem. 2.)  As a result, Plaintiff claims he is physically disabled as defined by all applicable California and United States laws, and is a member of the public whose rights are protected by such laws.  (Id.)

Plaintiff alleges that Defendants "own, operate, and/or lease" Stop 2 Save (aka 7 Star Liquor), located at 1230 Martin Luther King Jr. Way, Merced, California 95341 (the "Facility"). (FAC ¶¶ 1, 7; Mem. 1.)  The Facility is open to the public, intended for non-residential use, its operation affects commerce, and thus Plaintiff alleges the Facility is a public accommodation as defined by the applicable laws.  (Compl. ¶ 9.)  Plaintiff is a California resident who regularly travels to the area where the Facility is located, and visited the Facility on June 10, 2021, to purchase snacks.  (FAC ¶ 10.)  During his visit to the Facility, Plaintiff encountered several barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges, and accommodations offered at the Facility.  (Id.)

First, Plaintiff claims he had difficulty locating the designated accessible parking stall as it was poorly marked, had pavement markings so faded they were barely visible, and had improperly placed signage.  (Compl. ¶ 10(a).)  Second, Plaintiff had difficulty unloading and loading from his vehicle using his prosthetic leg, as the surface of the designated accessible parking stall was excessively sloped and uneven.  (Compl. ¶ 10(b).)  Third, Plaintiff had difficulty walking between his parking stall and the Facility entrance since the surface of the route was excessively sloped and uneven, with large cracks and bumps creating trip hazards. (Compl. ¶ 10(c).)

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1    Plaintiff claims he was, and continues to be deterred from visiting the Facility because he

2    knows the goods, services, facilities, privileges, advantages, and accommodations were and are

3    unavailable to Plaintiff due to his physical disabilities.  (FAC ¶ 12.)  Plaintiff also claims that he

4    enjoys the goods and services offered, and will return once the barriers are removed.  (Id.)

5          **C.      Relief Sought**

6    Plaintiff pleads for the following relief: (1) injunctive relief, preventive relief, or other

7    proper relief; (2) statutory minimum damages under the Unruh Act; (3) attorneys' fees, expenses,

8    and costs; (4) interest; and (5) other proper relief as deemed by the Court.  (Compl. at p. 8.)  In

9    moving for default judgment, Plaintiff specifically seeks: (1) judgment against Defendants on all

10   claims, with an injunction requiring Defendants to remove the architectural barriers encountered;

11   (2) statutory damages in the amount of $4,000; and (3) attorneys' fees and costs in the amount of

12   $4,306.98, plus any additional fees incurred as a result of counsel's appearance at the hearing on

13   this matter.  (ECF No. 22 at 1-2; Mem. 6-8.)

14                                        **III.**

15                      **LEGAL STANDARD FOR DEFAULT JUDGMENT**

16   "Our starting point is the general rule that default judgments are ordinarily disfavored," as

17   "[c]ases should be decided upon their merits whenever reasonably possible."  NewGen, LLC v.

18   Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472

19   (9th Cir. 1986)).  Pursuant to Federal Rules of Civil Procedure 55, obtaining a default judgment is

20   a two-step process.  Entry of default is appropriate as to any party against whom a judgment for

21   affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal

22   Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R.

23   Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P.

24   55(b).  Federal Rule of Civil Procedure 55(b)(2) provides the framework for the Court to enter a

25   default judgment:

26          (b) Entering a Default Judgment.

27                 (2) By the Court. In all other cases, the party must apply to the court for a
                   default judgment. A default judgment may be entered against a minor or
28                 incompetent person only if represented by a general guardian, conservator,

or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

> (A) conduct an accounting;

> (B) determine the amount of damages;

> (C) establish the truth of any allegation by evidence; or

> (D) investigate any other matter.

Fed. R. Civ. P. 55.

The decision to grant a motion for entry of default judgment is within the discretion of the court. PepsiCo, Inc. v. California Security Cans, 238 F.Supp. 1172, 1174 (C.D. Cal. 2002). The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true." Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6) ("An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied."). Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means. Microsoft Corp. v. Nop, 549 F.Supp.2d 1233, 1236 (E.D. Cal. 2008). Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted). The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings. Fed. R. Civ. P. 54(c).

1
2

**IV.**

**DISCUSSION**

3      The Court first determines whether the Court properly has jurisdiction in this matter, and

4  then turns to the <u>Eitel</u> factors to determine whether default judgment should be entered.

5      **A.**      **Jurisdiction**

6          1.      <u>Subject Matter Jurisdiction</u>

7      Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to

8  that granted by Congress.  <u>U.S v. Sumner</u>, 226 F.3d 1005, 1009 (9th Cir. 2000).  Pursuant to 28

9  U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the

10  Constitution, laws, or treaties of the United States.'  "A case 'arises under' federal law either

11  where federal law creates the cause of action or where the vindication of a right under state law

12  necessarily turns on some construction of federal law."  <u>Republican Party of Guam v. Gutierrez</u>,

13  277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting <u>Franchise Tax Bd.</u>

14  <u>v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 8–9 (1983) (citations omitted)).  "[T]he

15  presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint

16  rule,' which provides that federal jurisdiction exists only when a federal question is presented on

17  the face of the plaintiff's properly pleaded complaint."  <u>Republican Party of Guam</u>, 277 F.3d at

18  1089 (citations omitted).

19      Plaintiff brings this action alleging violations of the Americans with Disabilities Act of

20  1990, 42 U.S.C. § 12101, *et seq*.  Therefore, the Court has original jurisdiction under 28 U.S.C. §

21  1331.  In addition, the Court may appropriately exercise supplemental jurisdiction under 28

22  U.S.C. § 1367 for Plaintiff's related state law claims.

23          2.      <u>The Court finds Service of Process on Defendants to be Adequate</u>

24      As a general rule, the Court considers the adequacy of service of process before

25  evaluating the merits of a motion for default judgment.  See <u>J & J Sports Prods., Inc. v. Singh</u>,

26  No. 1:13-CV-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); <u>Penpower</u>

27  <u>Tech. Ltd. v. S.P.C. Tech.</u>, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); <u>Mason v. Genisco</u>

28  <u>Tech. Corp.</u>, 960 F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant]

1  in the earlier action, the default judgment is void and has no res judicata effect in this action.").

2  "Rule 4 is a flexible rule that should be liberally construed so long as a party receives

3  sufficient notice of the complaint." Direct Mail, 840 F.2d at 688 (quoting United Food &

4  Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984)). However,

5  "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the

6  defendant in the complaint will provide personal jurisdiction.' " Direct Mail, 840 F.2d at 688

7  (quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir.1986)). "[A] signed return of service

8  constitutes prima facie evidence of valid service which can be overcome only by strong and

9  convincing evidence." SEC v. Internet Solutions for Bus., Inc., 509 F.3d 1161, 1163 (9th Cir.

10  2007).

11  As noted above, Plaintiff, without prompting by the Court, essentially conceded there

12  may be issues with the initially filed executed summonses. (See ECF Nos. 4, 11, 13, 14.) The

13  Court turns to consider the subsequently filed executed summons.

14      **a.**    **Defendant Rashed**

15  On February 17, 2022, Plaintiff filed an executed summons proffering that Defendant

16  Abdulsalam Mahmood Rashed dba Stop 2 Save aka 7 Star Liquor, was served by leaving the

17  service documents with an Adam Mothna, "Person In Charge Of Office," on February 2, 2022,

18  at 12:30 p.m., at the Facility's address, 1230 Martin Luther King Jr. Way, Merced, California

19  95341. (ECF No. 16 at 2.) The affidavit proffers the service was completed by leaving the

20  documents with Adam Mothna, a person at least 18 years of age apparently in charge of the

21  office or usual place of business of the person served. (Id.)

22  Plaintiff submits that Defendant Rashed was served in compliance with Federal Rule of

23  Civil Procedure 4(e)(2)(B). (Mem. 10.)

24  Federal Rule of Civil Procedure 4(e) governs service on individuals within a judicial

25  district of the United States and provides that a plaintiff may serve an individual by:

26  (1) following state law for serving a summons in an action brought in courts of
27  general jurisdiction in the state where the district court is located or where service
   is made; or

28  (2) doing any of the following:

7

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

The Court finds service on Rashed to be adequate. See Fed. R. Civ. P. 4(e)(2)(B); Internet Solutions for Bus., 509 F.3d at 1163. The Court notes that Defendant Rashed filed a motion for an extension of time to file an opposition to the instant motion, along with a declaration (ECF No. 24 at 1-2). See Direct Mail, 840 F.2d at 688.

**b.     Defendant HBA**

On February 17, 2022, Plaintiff filed an executed summons proffering that Defendant HBA Enterprises, Inc., was served by serving Mohammed Adi, "Person Authorized to Accept Service of Process," on February 3, 2022, at 1:09 p.m., at 3616 Mallorca Ct., Cameron Park, California 95682, by substitute service by leaving the copies with or in the presence of "Jane DOE (W/F/65/5'5/120#)," a competent member of the house at the dwelling place or usual abode of the person served. (ECF No. 15 at 2.)

The Court has taken judicial notice of the records of the California Secretary of State as to Defendant HBA. Judicial notice may be taken "of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); see also L'Garde, Inc. v. Raytheon Space & Airborne Sys., 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011) (taking judicial notice of records searches on the California Secretary of State corporate search website as the accuracy of such record searches "can be determined by readily accessible resources whose accuracy cannot reasonably be questioned."). The last statement of information for HBA, entry date of June 29, 2021, provides that Mohmmad Adi is the CEO, Secretary, CFO, Director, and the Agent for Service of Process for HBA.[2] The filing confirms that the address is the same address as service was effectuated.

---

[2] The Court notes that as of September 1, 2021, HBA's status is "FTB suspended."

1    Plaintiff submits that Defendant HBA was served in compliance with Federal Rule of

2   Civil Procedure 4(h)(1)(A).  Under this provision, a corporation, partnership, or association may

3   be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."  Fed. R. Civ. P.

4   4(h)(1)(A).  Plaintiff submits that pursuant to Rule 4(e)(1), service could be effectuated pursuant

5   to California Code of Civil Procedure § 415.20(a).

6    In California, a corporation may be served by delivery to the person designated as an

7   agent for service of process, or to the "president, chief executive officer, or other head of the

8   corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer,

9   a controller or chief financial officer, a general manager, or a person authorized by the

10  corporation to receive service of process."  Cal. Civ. Proc. Code § 416.10(a)-(b).  In California,

11  substitute service on the person to be served to effectuate service on a corporation may be made:

12  "by leaving a copy of the summons and complaint during usual office hours in his or her office

13  or, if no physical address is known, at his or her usual mailing address, other than a United

14  States Postal Service post office box, with the person who is apparently in charge thereof, and

15  by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid

16  to the person to be served at the place where a copy of the summons and complaint were left."

17  Cal. Civ. Proc. Code § 415.20(a).

18   The Judicial Council Comment provides additional guidance on substitute service on

19  entities:

20       If a defendant is a corporate or noncorporate entity, service may be made in the
21       first instance, in lieu of delivery of process to a specified officer or employee of
         such entity personally, by leaving the papers in his office . . .

22       . . . The papers must be delivered to a person who is apparently in charge of such
23       office, such as the personal secretary of the person to be served, and such delivery
         must be made during the usual office hours. In addition, a copy of the papers
24       thereafter must be mailed (by ordinary first-class mail, postage prepaid) to the
         person to be served at the place of delivery.

25       The process server must set forth in his affidavit of service facts showing that
         these requirements were complied with. (Sections 417.10(a), 417.20(a).)
26

27  Judicial Council Comment to Cal. Civ. Proc. Code § 415.20(a).  As stated in the comment,

28  Section 417.10 requires process servers to set forth certain facts in the affidavit of service.

Section 417.10 states in relevant part:

> Proof that a summons was served on a person within this state shall be made:

> (a) If served under Section . . . 415.20 . . . by the affidavit of the person making the service showing the time, place, and manner of service and facts showing that the service was made in accordance with this chapter. The affidavit shall recite or in other manner show the name of the person to whom a copy of the summons and of the complaint were delivered, and, if appropriate, his or her title or the capacity in which he or she is served, and that the notice required by Section 412.30 appeared on the copy of the summons served, if in fact it did appear.

Cal. Civ. Proc. Code § 417.10(a).  Additionally, the Judicial Council Comment to Section 417.10 describes additional requirements for the affidavit to demonstrate substitute service on an entity:

> In the case of substituted service pursuant to Section 415.20(a) on a corporate or noncorporate entity . . . the affidavit or certificate must state or show, in addition to the time, place, and manner of service, etc., that: (1) the place of delivery is the office of a person who may be served under those sections, and the name and title or representative capacity, if any, of such person, (2) the time of delivery was during usual office hours, (3) the name and title, if any, of the person to whom the papers were delivered, and that he had been determined by the process server to be the person apparently in charge of such office, and (4) the date a copy of the papers was thereafter mailed (by first-class mail, postage prepaid) to the person to be served at the place of delivery.

Judicial Council Comment to Cal. Civ. Proc. Code § 417.10.

Given the above standards pertaining to substitute service on a corporation, there are some issues with Plaintiff's argument that service was sufficient through Cal. Civ. Proc. Code § 415.20(a).  The statute provides substitute service on a corporation may be had by leaving the documents "during usual office hours in his or her office," or alternatively, if no physical address is known, at the usual mailing address with the person who is apparently in charge thereof.  Cal. Civ. Proc. Code § 415.20(a).  However, the proof of service indicates that the agent for service of process, was served through substitute service on Jane Doe, a "Competent Member Of The Household – Co-Occupant."  (ECF No. 15 at 2.)  The filing also indicates that the copies of the papers were left with Jane Doe, "a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the person served."  (Id.)  This is the language generally used for substitute service on an individual in California, not a corporation.  See Cal. Civ. Proc. Code § 415.20(b) ("If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by

1  leaving a copy of the summons and complaint at the person's dwelling house, usual place of

2  abode, usual place of business, or usual mailing address other than a United States Postal Service

3  post office box, in the presence of a competent member of the household or a person apparently

4  in charge of his or her office, place of business, or usual mailing address other than a United

5  States Postal Service post office box.").

6      The fact that the affidavit does provide that the person to be served through substitute

7  service is: "Mohammaed Adi – Person Authorized to Accept Service of Process," likely satisfies

8  the requirement that the "affidavit or certificate must state or show . . . that: (1) the place of

9  delivery is the office of a person who may be served under those sections, and the name and title

10 or representative capacity, if any, of such person."  Judicial Council Comment to Cal. Civ. Proc.

11 Code § 417.10.  Given the address for service matches that registered with the California

12 Secretary of State, it is reasonable to accept that the affidavit does meet this requirement,

13 particularly as it appears the agent for service is using a residential address as their office.  The

14 Court is satisfied that despite the apparently incorrect terminology reflected on the face of the

15 affidavit, given the address, time, and manner of service on the individual at the location, and

16 looking at the content rather than the form of the affidavit and California's laws' requirements, in

17 providing the corporate defendant notice through their registered agent for service of process,

18 substitute service was made "by leaving a copy of the summons and complaint during usual

19 office hours in his or her office . . .  with the person who is apparently in charge thereof."  Cal.

20 Civ. Proc. Code § 415.20(a).

21      The Court also considers whether service on the Jane Doe was sufficient.  This Court has

22 previously examined and recommended finding service inadequate in a motion for default

23 judgment filed by this same counsel, where service was proffered to have been effectuated on

24 insufficiently described "doe" individuals, at an address different from that of the registered

25 agent for service of process.  See Jose Trujillo v. Harsarb, Inc., et al., No.

26 121CV00342NONESAB, 2021 WL 3783388, at *6-7 (E.D. Cal. Aug. 26, 2021), report and

27 recommendation adopted in part sub nom. Trujillo v. Harsarb, Inc., No.

28 121CV00342NONESAB, 2021 WL 4804249 (E.D. Cal. Oct. 14, 2021).  While here too there

was substitute service completed on a "doe" individual, the Court finds Plaintiff has sufficiently demonstrated service given service was effectuated at the address for the registered agent for service of process.   See J & J Sports Prods., Inc. v. Barksdale, No. CIV S-11-2994 JAM, 2012 WL 1353903, at *5 (E.D. Cal. Apr. 13, 2012) ("The mere fact that the service documents were left with an unidentified adult is not fatal to the service, because courts have recognized that persons in apparent charge of businesses often refuse to provide their names for purposes of service, and that it is an accepted practice to name such a person by a fictitious name or by description [and] [f]urthermore, the substituted service statute also has an additional safeguard built into the process by requiring follow-up service by mail."), report and recommendation adopted, No. 2:11-CV-2994 JAM CKD, 2012 WL 2376284 (E.D. Cal. June 22, 2012); Internet Solutions for Bus., 509 F.3d at 1163 ("[A] signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence."); Tim Pao v. Liphan Lee, No. CV136421DSFAJWX, 2013 WL 12203046, at *2 (C.D. Cal. Oct. 21, 2013) ("[T]he process server's affidavit adequately describes John Doe as a person 'apparently in charge[,]' [and] [t]he Pico Boulevard address is the registered entity address for Pao, Inc."); Dist. Council 16 N. CA Health & Welfare Tr. Fund v. Advanced Concrete Techs., Inc., No. C 08-04430 WHA, 2009 WL 1125874, at *1 (N.D. Cal. Apr. 27, 2009) ("The proof of service indicates that 'substituted service' was executed on a John Doe 'apparently in charge at the place of business,' and that the summons, complaint and other documents were also sent by first-class mail[,] [s]ervice was executed on a California address on file with the California Secretary of State for defendant (as well as an address of former-defendant Raines) [and] counsel for plaintiffs served the request for entry of default on three California addresses for defendant.")[3]

---

[3] Additionally, the certificate of subsequent mailing does affirm that the mailing was completed "after substituted service under section CCP 415.20(a) or 415.20(b) or FRCP 4(e)(2)(B) or FRCP 4(h)(1)(B)."  (ECF No. 15 at 3.) The filing additionally affirms that California Civil Procedure Code § 412.30 was complied with.  (Id. at 1-3.) Specifically, Section 412.30, referenced in Section 417.10(a), requires a precise notice to be included in the summons, which if not included, precludes entry of default. Cal. Civ. Proc. Code § 412.30.  "If such notice does not appear on the copy of the summons served, no default may be taken against such corporation or unincorporated association or against such person individually, as the case may be."  Id.  The Court finds this requirement has been sufficiently met.

1     For the above reasons, the Court finds service on Defendant HBA to be adequate.  See

2 Fed. R. Civ. P. 4(h)(1)(A); Cal. Civ. Proc. Code § 415.20(a).

3     **B.**    **The <u>Eitel</u> Factors Weigh in Favor of Granting Default Judgment**

4     The Court finds that consideration of the <u>Eitel</u> factors weighs in favor of granting default

5 judgment in favor of Plaintiff.

6     1.    <u>Prejudice to Plaintiff if Default Judgment is Not Granted</u>

7     Plaintiff filed this action on September 10, 2021.  (ECF No. 1.)  Defendants were alleged

8 to have been served on February 2, 2022, and February 3, 2022.  (ECF Nos. 15, 16.)  If default

9 judgment is not entered, Plaintiff, a disabled individual, is effectively denied a remedy for the

10 violations of the disability statutes as alleged, until such time as the Defendants in this action

11 decide to appear in the litigation, which may never occur.  Defendants have not filed an answer,

12 a motion to dismiss, or otherwise appeared in the action, aside from Defendant Rashed filing a

13 motion for an extension of time to file an opposition to the motion for default judgment, on April

14 29, 2022.  (ECF No. 24.)  Despite that extension, no oppositions were filed and no Defendants

15 made an appearance at the hearing held on July 6, 2022.

16     For these reasons, the Court finds Plaintiff would be substantially prejudiced if default

17 judgment is not granted and finds this <u>Eitel</u> factor weighs in favor of granting default judgment

18 in favor of Plaintiff.  <u>See, e.g.</u>, <u>Vogel v. Rite Aid Corp.</u>, 992 F. Supp. 2d 998, 1007 (C.D. Cal.

19 2014).

20     2.    <u>The Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint</u>

21     The second and third <u>Eitel</u> factors instruct the Court to evaluate the merits of the

22 substantive claims alleged in the complaint as well as the sufficiency of the complaint itself.  It is

23 appropriate for the Court to analyze these two factors together.  <u>AMUR Equip. Fin., Inc. v. CHD</u>

24 <u>Transp. Inc.</u>, No. 117CV00416AWISKO, 2017 WL 5477379, at *5 (E.D. Cal. Nov. 15, 2017);

25 <u>F.D.I.C. v. Quest, F.S., Inc.</u>, No. SACV 10-00710 DOC, 2011 WL 2560428, at *2 (C.D. Cal. June

26 27, 2011).  In doing so, the Court looks to the complaint to determine if the allegations contained

27 within are sufficient to state a claim for the relief sought.  <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388

28 (9th Cir. 1978).

1         **a.     Americans with Disabilities Act**

2         One of the purposes of the ADA is "to provide clear, strong, consistent, enforceable

3  standards addressing discrimination against individuals with disabilities."    42 U.S.C. §

4  12101(b)(2).  "Congress enacted the statute on the premise that discrimination against the disabled

5  is 'most often the product, not of invidious animus, but rather the thoughtlessness and

6  indifference—of benign neglect.' "  Cohen v. City of Culver City, 754 F.3d 690, 694 (9th Cir.

7  2014) (quoting Alexander v. Choate, 469 U.S. 287, 295 (1985)).  "Therefore, the ADA proscribes

8  not only 'obviously exclusionary conduct,' but also 'more subtle forms of discrimination—such as

9  difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals'

10  full and equal enjoyment' of public places and accommodations."  Cohen, 754 F.3d at 694

11  (quoting Chapman v. Pier 1 Imps. (U.S.) Inc., 631 F.3d 939, 945 (9th Cir.2011)).  "An ADA

12  plaintiff suffers a legally cognizable injury under the ADA if he is 'discriminated against on the

13  basis of disability in the full and equal enjoyment of the goods, services, [or] facilities . . . of any

14  place of public accommodation.' "  Chapman, 631 F.3d at 952 (quoting 42 U.S.C. § 12182(a))

15  (alteration in original).

16        "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is

17  disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or

18  operates a place of public accommodation; and (3) the plaintiff was denied public accommodations

19  by the defendant because of her disability."  Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th

20  Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)).  Discrimination under the ADA is defined to include

21  "a failure to remove architectural barriers, . . . in existing facilities, . . . where such removal is

22  readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).  To state a claim for discrimination under the

23  ADA because of denial of public accommodations due to "the presence of architectural barriers in

24  an existing facility, a plaintiff must allege and prove that: '(1) the existing facility at the

25  defendant's place of business presents an architectural barrier prohibited under the ADA, and (2)

26  the removal of the barrier is readily achievable.' "  Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d

27  1134, 1138 (S.D. Cal. 2006) (quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085

28  (D. Haw. 2000)); see also Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 590 (9th Cir. 2003).

1         i.        <u>Plaintiff has Established he is Disabled under the ADA</u>

2         Plaintiff must allege that he is disabled under the ADA.  <u>Molski</u>, 481 F.3d at 730.  The

3 ADA defines disability as "a physical or mental impairment that substantially limits one or more

4 major life activities."  42 U.S.C. § 12102(1)(A).  Major life activities include walking, standing,

5 and hearing.  42 U.S.C. § 12102(2)(A).  Plaintiff alleges that he is substantially limited in his

6 ability to walk, and must use a wheelchair or prosthetic for mobility.  (Compl. ¶ 8.)  The Court

7 notes that plaintiffs often submit a declaration attesting to their disability and interactions with the

8 defendant's facility with the motion for default judgment.  No such declaration was provided here,

9 however, the Court takes the allegations contained in the complaint as true for purposes of default

10 judgment, and the complaint is verified.  (<u>See</u> ECF No. 1 at 9.)

11         Taking the allegations in the complaint as true for purposes of default judgment, Plaintiff

12 has adequately established this element of his ADA discrimination claim.

13         ii.       <u>Plaintiff has Established Defendants Own, Operate, or Lease a Public</u>
14                         <u>Accommodation</u>

15         Plaintiff must allege that the Defendant "owns, leases (or leases to), or operates a place of

16 public accommodation."  42 U.S.C. § 12182(a); <u>Molski</u>, 481 F.3d at 730.  Plaintiff proffers the

17 Facility is open to the public, intended for non-residential use, its operation affects commerce, and

18 is a place of public accommodation under the applicable laws.  (Compl. ¶ 10; Mem. 9.)

19         The ADA provides that a "a bakery, grocery store, clothing store, hardware store, shopping

20 center, or other sales or rental establishment" are considered public accommodations.  42 U.S.C. §

21 12181(7)(E).  Plaintiff alleges he visited the Facility to purchase snacks on June 10, 2021.

22 (Compl. ¶ 10.)  Plaintiff's complaint generally states, "Defendants own, operate, and/or lease the

23 Facility, and consist of a person (or persons), firm, and/or corporation."  (Compl. ¶ 7.)  The motion

24 states that the Defendants "own and operate the Facility and the real property in and on which the

25 Facility is located."  (Mem. 2.)  Plaintiff proffers this is evidenced by the Grant Deed for the

26 Facility and the liquor license information obtained from the California Department of Alcoholic

27 Beverage Control.  (Decl. Tanya Moore Supp. Mot. Default. J. ("Moore Decl.") ¶¶ 14-15, Exs. D,

28 E, ECF Nos. 22-2 at 1-4, 22-3 at 11-19.)

Taking the allegations as true for purposes of default judgment, and in consideration of the supporting declaration of counsel and the exhibits attached thereto, the Court finds Plaintiff has sufficiently alleged that the Defendants own or operate the Facility, a place of public accommodation.

iii.      Plaintiff was Denied Public Accommodations due to an Architectural Barrier

Plaintiff must allege and prove that he was denied public accommodations by a defendant because of his disability.  Molski, 481 F.3d at 730.  Here, Plaintiff may establish such denial by demonstrating the facility presents an architectural barrier prohibited under the ADA, and the removal of the barrier is readily achievable.  Hubbard, 433 F. Supp. 2d at 1138.

1)      Architectural Barrier

Congress entrusted the Attorney General with promulgating the implementing regulations for Title III.  Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42 U.S.C. § 12186(b)).  Congress provided that these implementing regulations must be consistent with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") in 1991.  Id. (citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A).  The Attorney General adopted the ADAAG as the "Standards for Accessible Design," and they lay out the technical structural requirements of places of public accommodation and are applicable during the design, construction, and alteration of such facilities.  Id. (citing 28 C.F.R. Pt. 36, App. A).  "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines."  Chapman, 631 F.3d at 945.

Plaintiff proffers that because no discovery has occurred, Plaintiff does not know if the Facility was constructed or had any alteration done after March 15, 2012, and therefore will apply the 1991 ADAAG standards to determine whether a barrier existed at the time of his visit to the Facility.  (Mem. 7.)  Plaintiff submits that the 2010 Standards now in effect will govern any injunction which issues though, since the remedial work will be undertaken after March 15, 2012. (Mem. 4.)

First, Plaintiff claims he had difficulty locating the designated accessible parking stall as

it was poorly marked, had pavement markings so faded they were barely visible, and had improperly placed signage.  (Compl. ¶ 10(a).)  Plaintiff argues Defendants thus failed to provide proper pavement markings and signage at the designated accessible parking stall and access aisle, in violation of 1991 ADAAG § 4.6.4, as well as the 2010 Standards §§ 502.2, 502.3.3. (Mem. 5.)

Second, Plaintiff claims he had difficulty unloading and loading from his vehicle using his prosthetic leg, as the surface of the designated accessible parking stall was excessively sloped and uneven.  (Compl. ¶ 10(b).)  Plaintiff argues Defendants thus failed to provide an accessible parking stall that is free of excessive slopes and uneven surface, in violation of 1991 ADAAG § 4.6.3, as well as the 2010 Standards § 502.4.  (Mem. 5.)

Third, Plaintiff claims he had difficulty walking between his parking stall and the Facility entrance since the surface of the route was excessively sloped and uneven, with large cracks and bumps creating trip hazards.  (Compl. ¶ 10(c).)  Plaintiff argues Defendants thus failed to provide an accessible route of travel between the designated accessible parking stall and the Facility entrance in violation of 1991 ADAAG § 4.3, as well as the 2010 Standards § 206.2.1.  (Mem. 5.)

The Court notes that on default judgment in ADA cases, plaintiffs often present the results of an investigation by an independent consultant, such as a construction expert that takes measurements, or at least a more detailed declaration of the plaintiff in support of the claim that there is an architectural barrier.  In a recent action with another plaintiff but same counsel, counsel hired a consultant with knowledge of state and federal accessibility standards to visit the Facility and document the existence of the conditions Plaintiff complained about.  Here, counsel performed and billed for a personal site visit instead.  The details of the site visit do not appear to be presented in support of default judgment nor contained in the complaint.

Nonetheless, taking the allegations as true for purposes of default judgment as presented by Plaintiff in his complaint, and based on the applicable laws and regulations, the Court finds Plaintiff has sufficiently alleged and demonstrated the presence of architectural barriers present at the Facility which violate the ADA.

/ / /

1            2)       Whether Removal of the Architectural Barrier is Readily Achievable

2            Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable

3 and able to be carried out without much difficulty or expense."  42 U.S.C § 12181(9).  Factors to

4 be considered in determining whether such removal is readily achievable include: "(A) the nature

5 and cost of the action needed under this chapter; (B) the overall financial resources of the facility

6 or facilities involved in the action; the number of persons employed at such facility; the effect on

7 expenses and resources, or the impact otherwise of such action upon the operation of the facility;

8 (C) the overall financial resources of the covered entity; the overall size of the business of a

9 covered entity with respect to the number of its employees; the number, type, and location of its

10 facilities; and (D) the type of operation or operations of the covered entity, including the

11 composition, structure, and functions of the workforce of such entity; the geographic separateness,

12 administrative or fiscal relationship of the facility or facilities in question to the covered entity."

13 Id.  Federal regulations provide examples of readily achievable steps to remove barriers including:

14 installing ramps, making curb cuts in sidewalks and entrances, widening doors, eliminating a

15 turnstile or providing an alternative accessible path, and creating designated accessible parking

16 spaces, among other examples.  28 C.F.R. § 36.304(b).

17            Before the Ninth Circuit addressed whether the plaintiff or defendant carries the burden of

18 proving that removal of an architectural barrier is readily achievable, the majority of district courts

19 in the circuit applied the Tenth Circuit's burden-shifting framework developed in Colorado Cross

20 Disability Coal. v. Hermanson Family Ltd. P'ship I, 264 F.3d 999 (10th Cir. 2001).  See Moore v.

21 Robinson Oil Corp., 588 F. App'x 528, 530 (9th Cir. 2014).  At the default judgment stage, district

22 courts routinely found defaulting defendants had failed to plead the affirmative defense that

23 removal of the barrier is not readily achievable, and thus considered the defense waived for

24 purposes of default judgment.  See Moore, 588 F. App'x at 530; Vogel, 992 F. Supp. 2d at 1010;

25 Ngoc Lam Che v. Boatman-Jacklin, Inc., No. 18-CV-02060-NC, 2019 WL 3767451, at *2 (N.D.

26 Cal. Aug. 9, 2019).

27            In Lopez, the Ninth Circuit adopted a somewhat more lenient standard from the Second

28 Circuit, for courts to apply at the summary judgment stage.  Lopez v. Catalina Channel Express,

1  Inc., 974 F.3d 1030, 1038 (9th Cir. 2020) ("Although every circuit applies a burden-shifting

2  framework when addressing claims for removal of architectural barriers at summary judgment . . .

3  the Tenth Circuit requires plaintiffs to provide precise cost estimates and a specific design

4  regarding their proposed accommodation . . . whereas the Second Circuit requires plaintiffs only to

5  articulate a plausible proposal for barrier removal, the costs of which, facially, do not clearly

6  exceed its benefits, . . . We believe that the Second Circuit's approach is most sensible because

7  otherwise we would be asking too much of plaintiffs . . . we hold that to satisfy their initial burden,

8  ADA plaintiffs must plausibly show how the cost of removing the architectural barrier at issue

9  does not exceed the benefits under the circumstances.") (citing Roberts v. Royal Atl. Corp., 542

10 F.3d 363, 373 (2d Cir. 2008) (other citations and internal quotation marks omitted).  Plaintiff cites

11 Lopez in the moving papers, simply proffering that he "is required to plausibly explain why

12 removal of the barrier is readily achievable."  (Mem. 8.)  Plaintiff does not address the burden

13 shifting framework nor its manner of applicability as to the motion for default judgment context

14 versus the summary judgment context.

15      Magistrate Judge Kendall J. Newman recently issued findings and recommendations that

16 thoroughly discussed the Lopez burden shifting in the context a motion for default judgment.

17 Whitaker v. Sheikh, No. 221CV0493KJMKJNPS, 2022 WL 1262023, at *3 (E.D. Cal. Apr. 28,

18 2022) ("Because Lopez was an appeal from summary judgment for the defendant, the Ninth

19 Circuit had no occasion to address the pleading requirements for plaintiff to state a claim of

20 barrier-related discrimination.").  The Court will not reproduce the extensive discussion here,

21 however, the Court finds Judge Newman's analysis to be thorough, persuasive, and the Court

22 adopts the reasoning here.  In short, Judge Newman concluded as follows:

23          Therefore, despite the conclusory nature of plaintiff's allegations,
            the undersigned finds them sufficient to plausibly plead that it
24          would be readily achievable to lower a portion of the sales counter
            or add an adjacent lower counter.
25
            That is all a plaintiff must do at the pleadings stage. The
26          undersigned departs from the predominating practice among
            district courts—including those just cited—of finding on default
27          judgment motions that a complaint does or does not satisfy the
            plaintiff's "initial burden" under Lopez (or Colorado Cross, pre-
28          Lopez). As discussed at length above, the burden-shifting

> framework does not apply until the court is evaluating evidence. All the plaintiff must do at the pleadings stage to proceed under § 12182(b)(2)(A)(iv) is plausibly allege that the barrier's removal is readily achievable. Doing so does not "shift the burden" to the defendant, except insofar as it apprises the defendant of the need to plead the applicable affirmative defense to the contrary. If the defendant fails to so plead, the plaintiff is effectively entitled to judgment on the pleadings as to that claim—assuming he pleads the preceding elements of a qualifying disability, a covered public accommodation, and an architectural barrier encountered.

Whitaker v. Sheikh, 2022 WL 1262023, at *7.  Thus, Judge Newman declined to apply the burden-shifting analysis at the motion for default judgment stage.

Here, Plaintiff generally alleges that "Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, that the cost of removing the architectural barriers does not exceed the benefits under the particular circumstances, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so." (Compl. ¶ 21.)  Plaintiff also alleges that "[i]n the alternative, if it was not 'readily achievable' for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable." (Compl. ¶ 22.)  While the complaint only presents these *generic* allegations, Plaintiff's moving papers additionally present arguments as to each of the alleged barriers, including caselaw demonstrating that some of the potential changes, such as creating an accessible parking space, are routinely found to be readily achievable (Mem.4-6).  See, e.g., Johnson v. Altamira Corp., No. 16-CV-05335 NC, 2017 WL 1383469, at *3 (N.D. Cal. Mar. 27, 2017) ("Under 28 C.F.R. § 36.304(b), examples of readily achievable steps to remove barriers include . . . creating designated accessible parking spaces."), report and recommendation adopted, No. 16-CV-05335-LHK, 2017 WL 1365250 (N.D. Cal. Apr. 14, 2017).

The Court finds that Plaintiff has plausibly alleged that the removal of the architectural barriers is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv); Whitaker v. Sheikh, 2022 WL 1262023, at *7.  Further, if the Court were to employ a burden-shifting analysis, the Court would similarly find Plaintiff's allegations sufficient.  See Acosta v. Perez, No. 119CV01224AWIEPG, 2021 WL 3910543, at *8 (E.D. Cal. Sept. 1, 2021) (noting Lopez standard for summary

judgment, and finding Defendants failed to meet burden of presenting defense), <u>report and recommendation adopted,</u> No. 119CV01224AWIEPG, 2021 WL 4461536 (E.D. Cal. Sept. 29, 2021); <u>Johnson v. Garlic Farm Truck Ctr. LLC</u>, No. 20-CV-03871-BLF, 2021 WL 2457154, at *6 (N.D. Cal. June 16, 2021) ("Applying this burden-shifting framework here, Mr. Johnson has met his initial burden to plausibly show that removal of the identified barriers in the parking lot, entrance door, and access ramp are readily achievable. Mr. Johnson alleges that the identified barriers are "easily removed without much difficulty or expense" and that they are "the types of barriers identified by the Department of Justice as presumably readily achievable to [be] remove[d]." Compl. ¶ 20. Additionally, the Complaint alleges that "there are numerous alternative accommodations" to provide people with disabilities a greater level of access even if Defendants could not achieve complete removal of the barriers. Id. Those factual allegations are accepted as true on default judgment."); <u>but see</u> <u>Bouyer v. Ban Pan Corp.</u>, No. CV2011540MWFPDX, 2021 WL 2791623, at *3 (C.D. Cal. Apr. 5, 2021) ("Plaintiff's conclusory allegations 'fail to address or otherwise show how the costs of removal do not exceed the benefits under the particular circumstances.' ") (quoting <u>Bouyer v. Shaina Prop.</u>, LLC, No. CV 20-3930-FMO (PLAx), 2020 WL 7775618, at *2 (C.D. Cal. Nov. 2, 2020)).

Accordingly, for purposes of default judgment, the Court accepts Plaintiff's allegations as true and finds Plaintiff has plausibly alleged that removal of the architectural barriers he encountered is readily achievable. <u>Whitaker v. Sheikh</u>, 2022 WL 1262023, at *6–7 ("Although plaintiff does not cite the regulation to which he refers in either the complaint or the motion for default judgment, the court understands this as a reference to 28 C.F.R. § 36.304(b) . . . The Ninth Circuit recognizes this regulation as listing examples of barrier removals that are 'likely to be readily achievable[,]'. . . [w]hile § 36.304 does not necessarily establish a presumption that such forms of barrier removal are readily achievable, it does make their removal <u>plausibly</u> readily achievable . . [t]herefore, despite the conclusory nature of plaintiff's allegations, the undersigned finds them sufficient to plausibly plead that it would be readily

achievable to lower a portion of the sales counter or add an adjacent lower counter.")[4]

### b. California State Law Claims

Plaintiff also brings a state law claim for violation of the California's Unruh Civil Rights Act. (Compl. ¶¶ 34-41.) The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(a). Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum of at least $4,000.00 per violation. Cal. Civ. Code § 52(a); Molski v. M.J. Cable, Inc., 481 F.3d at 731; Vogel, 992 F. Supp. 2d at 1011. After passage of the ADA in 1990, the Unruh Civil Rights Act was amended to provide that a violation of the ADA constitutes a violation of the Unruh Civil Rights Act. Pickern v. Best W. Timber Cove Lodge Marina Resort, 194 F. Supp. 2d 1128, 1131

---

[4] The Court notes however, there is authority supportive of finding the allegations insufficiently pled. In Bouyer v. Ban Pan, the court found default judgment inappropriate for lack of subject matter jurisdiction, and that the complaint failed to state a claim for relief under the ADA because it "primarily recite[s] legal conclusions," and contained "no facts indicating whether the removal of the alleged barriers" was readily achievable. Bouyer, 2021 WL 2791623, at *3 (quoting Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1177 (9th Cir. 2021). Specifically, the court found the allegations failed to address or show how the costs of removal did not exceed the benefits under the particular circumstances, where the complaint contained the following generic allegation: "[t]he violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, Plaintiff is informed and believes there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable." Bouyer, 2021 WL 2791623, at *3 (quoting complaint at ¶ 26); see also Whitaker v. Prime Oil Mgmt., L.L.C., No. CV2010649MWFJEMX, 2021 WL 4353246, at *3 (C.D. Cal. Apr. 8, 2021) (same); Bouyer, 2020 WL 7775618, at *2 (same).

In Bouyer v. Shaina Prop., the court denied the application for default judgment, and did not require plaintiff to file an amended complaint, but rather required any renewed application to "present sufficient evidence to meet his initial burden of plausibly showing that the requested accommodation is reasonable," under Lopez, in addition to requiring the plaintiff to "establish he is entitled to rely on the 2010 ADAAG Standards as a basis for each specific ADA violation claimed." 2020 WL 7775618, at *2. In Whitaker, the court required plaintiff to show cause in writing why the claim for injunctive relief under the ADA should not be dismissed for lack of subject matter jurisdiction, denied the motion for default judgment without prejudice, and then if able to show standing, required any renewed motion for default judgment to "provide evidence that (1) the barriers have not been removed since Plaintiff's visit in November 2020; (2) the cost of removing the barriers at issue does not exceed the benefits under the circumstances; and (3) Plaintiff is entitled to rely on the 2010 ADAAG Standards as a basis for each specific ADA violation claimed." Whitaker, 2021 WL 4353246, at *5.

Given the Court's adoption of the discussion in Whitaker v. Sheikh and distinguishing of Lopez in the context of a motion for default judgment, the Court finds it inappropriate to require the Plaintiff to provide evidence to meet a burden of production at the motion for default judgment stage. Additionally, under Lopez and Whitaker v. Sheikh, the Court finds Plaintiff has plausibly alleged removal of the barriers is readily achievable. See Whitaker v. Sheikh, 2022 WL 1262023, at *7 ("All the plaintiff must do at the pleadings stage to proceed under § 12182(b)(2)(A)(iv) is plausibly allege that the barrier's removal is readily achievable.").

1   (E.D. Cal. 2002); Cal. Civ. Code § 54.1(d) ("A violation of the right of an individual under the

2   Americans with Disabilities Act of 1990 . . . also constitutes a violation of this section.").

3          As Plaintiff has stated a cause of action entitling him to relief under the ADA, Plaintiff has

4   also stated a claim entitling him to relief under the Unruh Act.  See Vogel, 992 F. Supp. 2d at

5   1011-12; Villegas v. Beverly Corner, LLC, No. 216CV07651CASSSX, 2017 WL 3605345, at *5

6   (C.D. Cal. Aug. 18, 2017); Johnson v. Singh, No. 2:10-CV-2547 KJM JFM, 2011 WL 2709365, at

7   *1–4 (E.D. Cal. July 11, 2011).  For all of the above stated reasons, the Court finds the second and

8   third Eitel factors weigh in favor of granting default judgment in favor of Plaintiff on the ADA

9   claim and the Unruh Civil Rights Act claim.

10          3.      The Sum of Money at Stake in the Action

11          The sum of money at stake in this action also weighs in favor of granting default

12   judgment.  Default judgment is disfavored where large amounts of money are involved, or the

13   award would be unreasonable in light of the defendant's actions.  G & G Closed Circuit Events,

14   LLC v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012);

15   PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002) ("Under the

16   third Eitel factor, the court must consider the amount of money at stake in relation to the

17   seriousness of Defendant's conduct.").   In addition to injunctive relief, Plaintiff is seeking

18   statutory damages in the amount of $4,000.00, and attorneys' fees and costs in the amount of

19   $4,306.98, for a total award of $8,306.98.  This is not an excessive amount of money, nor does it

20   seem unreasonable in light of the allegations contained in the complaint.  See Vogel, 992 F.

21   Supp. 2d at 1012 (citing Moore v. Cisneros, No. 1:12–cv–00188 LJO SKO, 2012 WL 6523017,

22   *4 (E.D. Cal. Dec. 13, 2012) (noting an award of $10,119.70 on default judgment in ADA

23   discrimination  case  was  "not  a  relatively  large  sum  of  money,  nor  d[id]  it  appear

24   unreasonable")); Johnson v. Huynh, No. CIV S–08–1189 JAM DAD, 2009 WL 2777021, *2

25   (E.D. Cal. Aug. 27, 2009) (holding injunctive relief and an award of $12,000.00 for ADA

26   violations on default judgment was "relatively small award of damages").

27          Further, the Court recommends the attorneys' fees should be reduced, as discussed

28   below.  For these reasons, the Court finds this Eitel factor weighs in favor of granting default

1  judgment in favor of Plaintiff against Defendants.

2            4.      The Possibility of a Dispute Concerning Material Facts

3        The next <u>Eitel</u> factor considers the possibility of dispute concerning material facts.  As

4  discussed above, Plaintiff has sufficiently alleged disability discrimination under the ADA and the

5  Unruh Act by demonstrating his encountering of architectural barriers at the Facility.  The Court

6  finds this factor weighs in favor of entering default judgment as there is no possibility of dispute

7  regarding the material facts due to the factual allegations in the complaint being taken as true upon

8  Defendant's default.  <u>See</u> <u>Garamendi</u>, 683 F.3d at 1080; <u>PepsiCo, Inc. v. California Sec. Cans</u>, 238

9  F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Upon entry of default, all well-pleaded facts in the

10  complaint are taken as true, except those relating to damages.").

11        Accordingly, the Court finds this <u>Eitel</u> factor weighs in favor of granting default judgment

12  in favor of Plaintiff against Defendants.

13            5.      Whether the Default Was Due to Excusable Neglect

14        Aside from Defendant Rashed moving for an extension of time to file an opposition to this

15  motion, Defendants have failed to file a responsive pleading or otherwise appear in the action.  In

16  addition to the summons and complaint, Plaintiffs also served the requests for entry of default as

17  well as the motion for default judgment on Defendants.  (ECF Nos. 18-2 at 1-2, 22-7 at 1-2.)

18  Defendants did not file any opposition to the motion for default judgment and did not make an

19  appearance at the hearing on the motion for default judgment, despite Rashed moving for the

20  extension of time.  Given these facts, there is no indication or evidence that the failure to respond

21  was due to excusable neglect.  <u>See</u> <u>Shanghai Automation Instrument Co. v. Kuei</u>, 194 F. Supp. 2d

22  995, 1005 (N.D. Cal. 2001) ("The default of defendant . . . cannot be attributed to excusable

23  neglect.  All were properly served with the Complaint, the notice of entry of default, as well as the

24  papers in support of the instant motion.").

25        Accordingly, the Court finds this <u>Eitel</u> factor weighs in favor of granting default judgment

26  in favor of Plaintiff against Defendants.

27  / / /

28  / / /

6.     The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." Eitel, 782 F.2d at 1472.  However, the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, the Defendants' failure to appear has made a decision on the merits impossible at this juncture.  Given the prejudice to Plaintiff if default judgment is not granted as discussed above, and the merits of the allegations contained in complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits.  See PepsiCo, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible.  Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

Accordingly, the Court finds the policy favoring decisions on the merit does not preclude entering default judgment against Defendants under these circumstances.

7.     The Eitel Factors Weigh in Favor of Granting Default Judgment

Based on the foregoing, the Court finds that the Eitel factors weigh in favor of granting default judgment and recommends that Plaintiff's motion for default judgment be granted.  The Court now turns to the types of relief requested by Plaintiff.

**C.     Relief Requested**

In addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees in the amount of $3,583, and costs of $723.98, for a total award of $8,306.98.  (Mem. 8.)  The Court recommends reducing the award of attorneys' fees for the reasons discussed below.

1.     Injunctive Relief

Plaintiff seeks an injunction compelling Defendants to comply with the ADA by removing the itemized barriers that he personally encountered.  (Compl. at 1, 7-9; Mem. 6; ECF No. 22 at 2.)  The ADA provides that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required" by

1   the ADA.  42 U.S.C. § 12188(a)(2).  A court may grant injunctive relief for violations of the Unruh

2   Act under § 52.1(h).  Vogel, 992 F. Supp. 2d at 1015; Cal. Civ. Code § 52.1 ("An action brought

3   pursuant to this section is independent of any other action, remedy, or procedure that may be

4   available to an aggrieved individual under any other provision of law.").  "Injunctive relief may be

5   granted 'when architectural barriers at defendant's establishment violate the ADA.' "  Johnson v.

6   Pizano, No. 2:17-CV-1655 TLN DB, 2019 WL 2499188, at *6 (E.D. Cal. June 17, 2019) (quoting

7   Vogel, 992 F.Supp.2d at 1015).

8        Pursuant to federal and California law, Plaintiff is entitled to the removal of those

9   architectural barriers which he encountered on his visit to the Facility that violated the ADA.

10  Therefore, an injunction should issue requiring Defendants to remove barriers that are in violation

11  of the ADA and the ADAAG.

12        2.   Statutory Damages

13        Plaintiff seeks statutory damages in the amount of $4,000.00 as authorized by the

14  California Unruh Civil Rights Act.  The Unruh Act provides for minimum statutory damages of

15  $4,000.00 for each violation.  Cal. Civ. Code § 52(a).  Under the Unruh Act, statutory damages

16  may be recovered if a violation of one or more construction related accessibility standards denied

17  the plaintiff full and equal access to the place of public accommodation on a particular occasion.

18  Cal. Civ. Code § 55.56(a).  A plaintiff is denied full and equal access only when they personally

19  encountered the violation on a specific occasion.  Cal. Civ. Code § 55.56(b).  A litigant need not

20  prove any actual damages to recover statutory damages of $4,000.00.  Molski, 481 F.3d at 731.

21        As discussed above, Plaintiff sufficiently alleged violation of the ADA which established a

22  violation of the Unruh Act, and thus the Court finds that Plaintiff is entitled to statutory damages in

23  the amount of $4,000.00.

24        3.   Attorneys' Fees and Costs

25        Plaintiff is requesting attorneys' fees in the amount of $3,583.00, and costs of $723.98, for

26  a total award of $4,306.98 in fees and costs.  (Mem. 8; Moore Decl. ¶¶ 5-13; Ex. A, ECF No. 22-3

27  at 1-5; Ex. B, ECF No. 22-3 at 7-8; Ex. C, ECF No. 22-3 at 9-10.)  Pursuant to 42 U.S.C. § 12205,

28  the party that prevails on a claim brought under the ADA may recover "a reasonable attorney's fee,

1   including litigation expenses," at the discretion of the Court.  "[U]nder federal fee shifting statutes

2   the lodestar approach is the guiding light in determining a reasonable fee."  Antoninetti v. Chipotle

3   Mexican Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010) (internal punctuation and citations

4   omitted).  The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts.  First a court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed.  A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary.  Second, a court may adjust the lodestar upward or downward using a multiplier based on factors not subsumed in the initial calculation of the lodestar.  The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high.

12  Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041,1045 (9th Cir. 2000) (internal citations

13  and punctuation omitted).

14        Under the lodestar method, the court will first determine the appropriate hourly rate for the

15  work performed, and that amount is then multiplied by the number of hours properly expended in

16  performing the work.  Antoninetti, 643 F.3d at 1176.  The district court has the discretion to make

17  adjustments to the number of hours claimed or to the lodestar, but is required to provide a clear but

18  concise reason for the fee award.  Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992).  The

19  lodestar amount is to be determined based upon the prevailing market rate in the relevant

20  community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).

21        a.      **Reasonable hourly rate**

22        Counsel Tanya E. Moore ("Moore"), has been in practice for over twenty years, with over

23  ten years spent almost exclusively in disability access litigation, and her current billing rate is

24  $650.00.  (Moore Decl. ¶¶ 3-6.)  However, Moore is only seeking an hourly rate of $300.00 for her

25  work on this matter, and is seeking an hourly rate of $115.00 for the work of paralegals Whitney

26  Law ("Law") and Isaac Medrano ("Medrano"), despite normally billing at a higher rate in the

27  Northern District of California, where the firm is located.  (Id. at ¶¶ 6-11.)

28        The lodestar amount is to be determined based upon the prevailing market rate in the

relevant community, Blum, 465 U.S. at 896 (1984), which in this matter is the Fresno Division of the Eastern District of California. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11.

This Court has previously found $300.00 per hour to be a reasonable rate for Moore. Trujillo v. Lakhani, No. 117CV00056LJOSAB, 2017 WL 1831942, at *8 (E.D. Cal. May 8, 2017); Trujillo v. Harsarb, 2021 WL 3783388, at *6-7. Further, in the context of cases alleging violations of the ADA, courts in this district have awarded fees ranging from $250.00 to $325.00 per hour within recent years. See Cervantes v. Vargas, No. 117CV00923LJOSKO, 2018 WL 2455615, at *7 (E.D. Cal. June 1, 2018) (awarding $275.00 per hour to attorney with nine years of experience and representation in 275 ADA actions); Block v. Christian, No. 1:16–cv–00650–LJO–SKO, 2017 WL 5248402, at *4 (E.D. Cal. Nov. 13, 2017) (finding $325.00 per hour to be a reasonable hourly rate for an attorney with twenty-four years of experience in general litigation and twelve years working on ADA cases); Block v. Starbucks Corp., No. 115CV00991DADCKD, 2018 WL 4352906, at *7 (E.D. Cal. Sept. 11, 2018) (same). Accordingly, the Court recommends that Plaintiff receive the requested $300.00 per hour for the services of Moore.

The Court also recommends that Plaintiff receive the requested $115.00 per hour for the services of the paralegals, as the Court has previously found the rate to be reasonable. Trujillo, 2017 WL 1831942, at *8; Trujillo v. Harsarb, 2021 WL 3783388, at *6-7; see also Durham v. FCA US LLC, No. 2:17-CV-00596-JLT, 2020 WL 243115, at *9 (E.D. Cal. Jan. 16, 2020) ("Generally, paralegal rates within the Fresno Division of the Eastern District range between $75 to approximately $150.00."); Tarango v. City of Bakersfield, No. 1:16-CV-0099-JLT, 2017 WL 5564917, at *8 (E.D. Cal. Nov. 20, 2017) (same); AT&T Mobility LLC v. Yeager, No. 2:13-CV-00007 KJM DB, 2018 WL 1567819, at *5 (E.D. Cal. Mar. 30, 2018) (reducing rate to $100 per hour, finding it to be "the reasonable hourly rate for paralegals in this division.").

/ / /

1       b.      **Reasonable number of hours**

2       Counsel Moore billed 8.8 hours in this action.  (Moore Decl. ¶ 9.)  Paralegal Law billed a

3   total of 3.5 hours.   (Decl. Paralegal Whitney Law ("Law Decl") ¶ 4, ECF No. 22-4 at 1-2.)

4   Paralegal Medrano billed a total of 4.7 hours.  (Decl. Paralegal Isaac Medrano ("Medrano Decl.") ¶

5   4, ECF No. 22-5 at 1-2.)

6       The Court is familiar with work and billing practices of Plaintiff's law firm.  The Court has

7   previously stated that "[b]ased upon the Court's familiarity with the actions filed by Ms. Moore's

8   firm in this court, the Court is aware that [Moore uses a] form complaint [that] is substantially

9   similar to dozens of other actions filed in this district," and previously found "time billed [to be]

10  excessive and duplicative and .5 hours would be a reasonable amount of time for Ms. Moore to

11  spend on preparing, researching, reviewing, and drafting the complaint." E.g., Trujillo, 2017 WL

12  1831942, at *7.  Indeed here, the paragraphs of the complaint are essentially identical as previous

13  actions, aside from a few sentences of information regarding the barriers in one paragraph of the

14  complaint.  (See, e.g., case no. 1:21-cv-00342-JLT-SAB, ECF No. 1; case no. 1:21-cv-01446-JLT-

15  SAB, ECF No. 11.)  Additionally, the motion for default judgment and the declaration attached are

16  also essentially identical to previous motions for default judgment.  (See, e.g., case no. 1:21-cv-

17  00342-JLT-SAB, ECF No. 12; case no. 1:21-cv-01446-JLT-SAB, ECF No. 26.)  Billing entries are

18  substantially similar as in previous actions.

19      Turning to the specific time entries here, between June 25, 2021, and September 12, 2021,

20  Moore expended 5.1 hours communicating with the client, inclusive of 0.5 hours for "[r]esearch

21  and attention to conflict check," and performing other investigation and review in relation to the

22  drafting and filing of the complaint, including a site visit.  (Ex. A, ECF No. 22-3 at 2.)  The largest

23  of these time entries by Moore is for 2 hours on August 12, 2021, for travel related to the site

24  inspection performed by Moore.  (Ex. A, ECF No. 22-3 at 2.)  The Court has previously reduced

25  the hours expended where Moore spent significant time driving to perform a site visit, without a

26  discernible benefit.  See Trujillo v. Harsarb, 2021 WL 3783388, at *6-7.  In another recent action,

27  the Court noted Moore had reduced the amount of billable hours by hiring a private investigator to

28  complete the site visit, and the Court recommended awarding such costs.  (See case no. 1:21-cv-

01446-JLT-SAB, ECF No. 28.)  The Court finds no discernible benefit or substantive information contained in the complaint or the motion for default judgment that reflects the usefulness of this site visit by counsel.  The complaint and motion for default judgment only contain the basic facts as alleged by Plaintiff as to his specific visit to the Facility.  Ms. Moore separately billed 0.5 hours for the time related to reviewing and noting observations from the site visit.  (Id.)  Accordingly, the Court finds the recommends reducing the hours by 2 hours.  The Court finds the remaining 2.6 hours in relation to the initiation and filing of the complaint to be excessive, given the almost entirely routine nature of the complaint aside from paragraph 10, and shall recommend reducing the total hours by 2.1, as 0.5 hours total for these tasks is reasonable.  See Trujillo, 2017 WL 1831942, at *7.

On November 4, 2021, Moore billed 0.3 hours reviewing communications with the client regarding an entry of default; on November 5, 2021, billed 1.0 hours reviewing file, proofs of service, and preparing instructions to Medrano for preparing requests for entry of default and supporting declarations, and reviewed service papers and final draft for filing; on January 27, 2022, billed 0.3 hours for "[i]nstructions re service"; on January 27, 2022, billed 0.5 hours drafting a motion for an extension of time for re-service; on February 6, 2022, billed 0.1 hours for review of memo re status of service prepared by paralegals; and on March 11, 2022, billed 0.5 hours preparing a request for entry of default.  (ECF No. 22-3 at 3-4.)  Given the billing entries of the paralegals discussed in greater detail below, particularly paralegal Medrano in relation to improper initial service and the significant time overall spent on requests for entry of default, the Court finds these billing entries by Moore to be excessive.  Plaintiff provides no explanation of the properness of billing in relation to the service issues.  The Court recommends reducing these hours from 2.7 to 0.5.

Counsel Moore billed 1.0 hour on the motion for default judgment.  (ECF No. 22-3 at 5.) Medrano billed 1.4 hours in relation to drafting the motion for default judgment.  (Id. at 4-5.)  The Court notes there are two entries for drafting the notice of motion, and two entries for drafting the attorney declaration.  (Id.)  Law expended 1.5 hours on the motion for default judgment.  (Id.)  The Court finds 1.5 hours of total paralegal time and .5 hours of Counsel Moore's time to be reasonable

for drafting the motion for default judgment and associated materials. Accordingly, the Court reduces Moore's time by 0.5, Law's time by 0.7, and Medrano's time by 0.7, for the work performed directly on the motion for default judgment.

On August 27, 2021, Law spent 0.9 hours reviewing documents regarding public records research completed by Medrano, conducting additional research to identify the Defendants, and reviewing photos, and revising the complaint; on December 1, 2021, billed 0.1 hours reviewing file for readiness for default judgment; on January 13, 2022, billed 0.3 hours to review and discuss sufficiency of service with Moore; on January 27, 2022, billed 0.3 hours to review service again and gave instructions on need to extend deadline to serve and re-serve the corporate defendant; on January 28, 2022, billed 0.1 hours reviewing order approving extension of service deadline; on March 17, 2022, billed 0.3 hours reviewing entry of default and reviewing file for readiness for default judgment; on March 25, 2022, billed 0.1 hours reviewing entry of default; and on March 28, 2022, billed 1.4 hours to revise the motion for default judgment. (ECF No. 22-3 at 3-5.)

Law billed a total of 3.5 hours. As noted above, the Court reduces the entry of 1.4 for the motion for default judgment, by 0.7 hours. As for the entries made before that work, the Court finds these other entries to be duplicative of work with Medrano and Moore; associated with multiple entries by multiple timekeepers in relation to improper service and the need to re-serve a Defendant; and are otherwise excessive and/or incorporate or consist of clerical tasks. See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."). The Court recommends a further reduction of 1.1 hours from the hours not related to the motion for default judgment, as 1.0 hours is reasonable for the remainder of the alleged work in this matter. Accordingly, the Court recommends reducing Paralegal Law's total billing entries from 3.5 hours to 1.7 hours.

On September 15, 2021, Medrano billed 0.3 hours reviewing the scheduling order and calendaring deadlines; on October 19, 2021, billed 0.1 hours corresponding with process servers; on October 22, 2021, billed 0.1 hours updating CCDA portal for service of process on HBA; on October 25, 2021, billed 0.1 hours drafting proof of service for HBA; on November 8, 2021, billed

0.1 hours drafting a consent to magistrate jurisdiction form; on November 10, 2021, billed 0.2 hours requesting entry of default against HBA, 0.2 hours for drafting the declaration in support of entry of default against HBA, and 0.2 hours drafting the certificate of service for the request for entry of default against HBA; on November 17, 2021, billed another 0.1 hours finalizing the request for entry of default; on December 10, 2021, billed 0.2 hours saving the minute order continuing the mandatory scheduling conference; on January 13, 2022, billed 0.1 hours corresponding with the process server for Rashed; on January 21, 2022, billed 0.1 hours drafting the proof of service for Rashed; on January 26, 2022, billed 0.10 hours to saving an order; on January 26, 2022, billed 0.2 hours drafting another request for entry of default; on January 27, 2022, billed 0.2 hours drafting the request for relief from the service deadline and billed 0.2 hours drafting the declaration for the request; on February 3, 2022, billed 0.1 hours saving an order; on March 11, 2022, billed 0.2 hours drafting request for entry of default as to all Defendants, billed 0.2 hours drafting the declaration for such request, and another 0.1 hours drafting the certificate of service; and between March 22, 2022, and March 28, 2022, billed 1.5 hours on the motion for default judgment.  (ECF No. 22-3 at 3-5.)

Medrano billed a total of 4.7 hours.  As noted above, the Court reduces the 1.4 hours expended in relation to the motion for default judgment, by 0.7 hours.  As for the entries made before that work, the Court finds other entries to be duplicative of work with Law and Moore; associated with multiple entries by multiple timekeepers in relation to improper service and the need to re-serve a Defendant; and are otherwise excessive and/or incorporate or consist of clerical tasks.  See Missouri, 491 U.S. at 288 n.10.  Of note are the multiple entries for saving orders to the hard drive or Dropbox, including one for 0.2 hours saving one minute order to Dropbox, on December 10, 2021.  Also of note is the 1.2 hours spent drafting requests for entry of default and associated materials, on November 10 and 17, 2021, and March 11, 2022, with the November requests ultimately needing to be redone in March because of improper service.  The Court recommends a further reduction of 2.5 hours from the hours not related to the motion for default judgment, as 0.8 hours is reasonable for the remainder of the alleged work in this matter by Medrano.  491 U.S. at 288 n.10.  Accordingly, the Court recommends reducing Medrano's total

billing entries from 4.7 hours to 1.5 hours.

Accordingly, totaling the above reductions, the Court finds that a reduction of 6.8 hours is appropriate for Moore, a reduction of 3.2 hours for Medrano is appropriate, and a reduction of 1.8 hours for Law is appropriate.   The Court shall add 0.1 hours for the time Moore expended attending the hearing via videoconference, which lasted less than five (5) minutes.

Accordingly, the Court finds that paralegal Whitney Law reasonably expended 1.7 hours on this litigation; that paralegal Isaac Medrano reasonably expended 1.5 hours in this litigation; and counsel Tanya Moore reasonably expended 2.1 hours in this litigation.

**c.     Reasonable Attorneys' Fee Award**

The Court finds that: (1) counsel Moore reasonably expended 2.1 hours in this action at a reasonable rate of $300.00 per hour, for a total of $630.00; (2) paralegal Whitney Law reasonably expended 1.7 hours in this action at a reasonable rate of $115.00 per hour, for a total of $195.50; and paralegal Isaac Medrano reasonable expended 1.7 hours in this litigation at a reasonable rate of $115.00 per hour, for a total of $172.50.

Accordingly, the Court recommends that Plaintiff be awarded attorneys' fees in the amount of $998.00, reduced from the requested amount of $3,583.00.

**d.     Costs**

Both the ADA and Unruh Act authorize the award of costs for an action.  <u>See</u> 42 U.S.C. § 12205; Cal. Civ. Code § 52(a).  Plaintiff seeks costs of $402.00 for filing fees, and $321.98 for service expenses.  (Moore Decl. ¶¶ 12-13; Ex. B, ECF No. 22-3 at 6-8; Ex. C, ECF No. 22-3 at 9-10.)  It does not appear that Plaintiff is seeking costs associated with the improper service, though there was an additional area surcharge of $80 for service on HBA.  (ECF No. 22-3 at 7.)  The Court finds these expenses to be reasonable and recommends awarding Plaintiff a total of $723.98 in costs.

**V.**

**RECOMMENDATION AND ORDER**

The <u>Eitel</u> factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court.  <u>See</u> <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th

1  Cir. 1980).

2        Based upon the foregoing, the Court HEREBY RECOMMENDS that:

3      1.     Plaintiff's motion for default judgment (ECF No. 22) be GRANTED;

4      2.     Plaintiff be AWARDED statutory damages in the amount of $4,000.00;

5      3.     Plaintiff be AWARDED reduced attorneys' fees in the amount of $998.00;

6      4.     Plaintiff be AWARDED costs in the amount of $723.98; and

7      5.     Plaintiff be GRANTED an injunction requiring Defendants, within six (6) months

8             of entry of the order, to provide disability access by making the following

9             modifications to the property known as known as Stop 2 Save aka 7 Star Liquor,

10             located at 1230 Martin Luther King Jr. Way in Merced, California ("the Facility"),

11             such that each item is brought into compliance with the accessibility requirements

12             of the Americans with Disabilities Act and California Code of Regulations, Title

13             24, by:

14                  i.   Providing a properly configured and identified accessible parking stall

15                      and adjacent access aisle, free of excessive slopes and uneven surfaces;

16                      and

17                ii.   Providing a properly configured accessible route of travel from the

18                      designated accessible parking to the Facility entrance, free of excessive

19                      slopes and uneven surfaces.

20  These findings and recommendations is submitted to the district judge assigned to this action,

21  pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days

22  of service of these recommendations, any party may file written objections to these findings and

23  recommendations with the Court and serve a copy on all parties.  Such a document should be

24  captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district

25  judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. §

26  636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may

27  result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014)

28  (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

1    Further, Plaintiff is HEREBY ORDERED to serve a copy of these findings and
2  recommendations on Defendants within three (3) days of entry.

3
4  IT IS SO ORDERED.

5  Dated:   __**July 8, 2022**__                _____
                                                  UNITED STATES MAGISTRATE JUDGE